Good morning, Your Honors. May it please the Court, my name is Harini Raghupathy from the Federal Defenders of San Diego on behalf of the appellant, Mr. Rivera. The government deported 16 witnesses it knew could not and did not identify Mr. Rivera as the driver. Could not identify anyone as the driver. That is correct. Couldn't identify somebody else as the driver either. That is correct. Do we actually know that? Do we know what questions these people were asked before they were deported? No, Your Honor. We're limited by the declarations that were provided by the agents. And what we know is the agents, according to the declarations on 840 to 853 of the ER, they specifically asked whether the alien could identify the driver of the boat. If the alien answered yes, they would have recorded that information for consideration. And then further in the declaration, they indicate that they, essentially, there was no information that was actually preserved. So it leads to the inference that they were unable to identify the driver. Do we know whether that means they showed them pictures and they said, I don't know which one it is, or whether they asked, do you know the driver's name? And they said, I don't know their name. I mean, how do we know even anything about what this means? I have two responses to that, Your Honor. First, the factual question, we don't know if they were shown pictures, but everything in the record suggests they were. And we know from the government's three material witnesses in their testimony at the depositions and at trial, they affirmed that they were shown the photographic lineup with Mr. Rivera's picture at the first position, and that they were asked to identify the driver. We don't know how that question was phrased, but I would say that that gap in the record is a result of not having access to the witnesses themselves and were forced to rely on the rather bare-bones declarations of the agents. Can you clarify that? There was a stipulation by Rivera's counsel that permitted the fact of non-identification to come into trial. He stipulated to that. So having so stipulated, do we know why he stipulated to that? And do we know, was there any opportunity before that stipulation for counsel to have examined the agents and asked them to clarify these missing details as to how they asked the question and how they showed? Was there any opportunity for counsel to do that before the stipulation? There was, Your Honor, in support of the motion to dismiss the indictment prior to trial, we requested, the defendant requested an evidentiary hearing in order to be able to question the agents as to the precise phrasing of their questions. But the district court denied an evidentiary hearing because it found, based solely on the declarations, that the testimony of the deported witnesses would not be material and favorable. And so having been put in that position at trial, we wanted to get the evidence before the jury in some capacity, and the stipulation was the best alternative we could have. So have you appealed the denial of that hearing? I mean, so is that sort of encompassed in what, because you're now saying we should dismiss the indictment because of this, right? But it's, wouldn't it be reasonable for us instead to say, let's have that hearing and let's find out what these questions were? I believe that would be a plausible remedy, but I think that in Valenzuela Bernal, the Supreme Court expressly said that when we're dealing with these deported witness context, materiality, the showing a defendant has to the evidence has been removed and the witness doesn't have access to it. So applying that lower standard of materiality, I think we have met that standard by showing that these 16 witnesses could have been brought forward. They could have impeached the government's three material witnesses. The very same people sitting on the same boat over the course of three hours were not able to identify the driver. But you established that by your stipulation. Your Honor, I have, you could argue that here's a stipulation. It's stipulated by both parties that the 16 people couldn't identify Mr. Rivera and therefore it probably isn't Mr. Rivera because they were sitting very close to him. You've got that in. Well, I have two responses to that, your Honor. First in Valenzuela Bernal, the Supreme Court said the benchmark for accumulativeness is the testimony of witnesses that can actually be brought to court, not stipulations. And I think the reason for that is had Mr. Rivera been able to interview the witnesses who were there, for example, he could have asked them, where precisely were you sitting on the boat in relation to the driver or in relation to the government's material witnesses? What were the conditions of visibility like that night? And those were things that were not adequately captured. We're not dealing here with an ineffective assistance of counsel claim as far as failing to investigate. What we're dealing here with is a bad faith claim. And so we have to show that the government had some conscious knowledge of exculpatory evidence that was available to the defendant and that they deported a person who had the exculpatory knowledge in order to frustrate the defense. That was Lael Del Carmen, right? They had a statement of one of the witnesses saying it wasn't who you say it was who was leading us through the jungle, through the desert. The government knew that. They had that statement and they deported the witness. Here we have a situation where the best you can argue is the government should have done a better job in finding out whether these persons could identify or could not identify. But you don't have the conscious knowledge that these persons had exculpatory evidence and that they were deported in order to frustrate the defense, do you? We do, Your Honor. Regarding the bad faith and the government's knowledge, Mr. Rivera explicitly signed a government form, and this was on page 812 of the ER, where it says, the question was posed to him, do you believe that any of the undocumented aliens who were arrested and detained with you could have information favorable to you? He answered yes, and at that point he was uncounseled. So that was everything that he could have done at that juncture to inform the government that these witnesses would be helpful to him. And then the agents questioned the witnesses and learned they couldn't identify the driver. And admittedly, that's different in quality from saying someone else did it, but the definition of materiality and favorableness isn't that it needs to per se exculpate the defendant, it's that it needs to be able to cast doubt on the defense, excuse me, on the government's case in chief. And these witnesses, the very fact of their non-identification would meet that standard because it would cause the jury to question the reliability of the government's three material witnesses. And you got a stipulation that all 16 of them could not identify the driver. But if you look at the government's argument in closing, they say the fact that more witnesses didn't come forward, and this is on 663, and testify against the Ponga boat driver in this case, it's certainly not surprising, and it's not enough to create a reasonable doubt on that night. But Mr. Rivera could have been able to rebut that argument had he had access to the witnesses. He wasn't able to explain why they were unable to identify the driver. Why do you say that? Have any of the witnesses ever been contacted and given a statement saying it wasn't Rivera, it was Diaz? By the defense, Your Honor? Yeah. We don't have access to their contact information. The answer is no. No. All right. Okay. So why do you say that he could have developed exculpatory evidence from witnesses who could not identify him or anyone else driving the boat? Sorry, could you repeat that question, Your Honor? I apologize. Yes. Why do you say that he could have developed exculpatory evidence from witnesses who say they couldn't identify him nor anyone else driving the boat? I suppose he could have attempted to go down to Mexico and attempt to... You're speculating, aren't you? How do you know what the witnesses would have said had they been better examined? It may well be that the agents didn't do a very good and thorough job of examination. I grant you that. But the question, the test is not that. The question is bad faith. Under Leal del Carmen, they have to know that the witness is exculpatory and deport him. That's what I understand. Now, where's the evidence that the government knew that the 16 had exculpatory evidence and deported them? Well, I believe Leal del Carmen says potentially exculpatory evidence, not exculpatory on its fate. Well, that was no, no, no. And Leal del Carmen, a witness, the issue was whether the defendant in that case had been leading the aliens through and giving orders to the aliens as to how to get them through into the United States. So if he was just a poor smuggler, that's one thing. But if he was a smuggler, that was something else. So they had a witness who said, no, he didn't give any orders. And that and she said it three times, as a matter of fact, in answer to the witness. And that witness was deported and not made available to the defense. Result, reversal, bad faith finding. Right. Sort of a Brady violation. But here, my question to you again, try again. Where's the evidence that these 16 witnesses, had they been adequately examined, would have said it wasn't Rivera, it was Diaz? Well, I would point again to Mr. Rivera's. We have Rivera. He's saying that he was allowed to. Did he testify? He did testify. Well, he testified. It wasn't me. It was somebody else. Right. OK. So he wasn't prevented. Correct. He wasn't prevented. But the question isn't he. But he has the right to present a defense. And part of that right to present a defense under the Fifth and Sixth Amendment is his ability to call witnesses in his favor. That's the compulsory, compulsory Sixth Amendment and the name. Again, where is there anything in the record showing that any of these 16 witnesses would have fingered Diaz, not Rivera, as the captain of the boat? Your Honor, we simply don't have that information. But my position would be that that is not necessary to meet the definition of materiality or favorableness. OK. I'm trying to see how this fits within an opinion which is highly critical of the government for deporting material witnesses. And I'm looking at the opinion and it's talking about the leading up the deportation of the only favorable witness. As Judge Baez said, you have to show the government acted in bad faith. And it says, there's no violation where the executive has made a good faith determination that the alien witness possesses no evidence that might exculpate the defendant. The defendant must demonstrate that the deportation prejudiced. The defendant must at least make a plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense. If the government interviews the witness or has other information suggesting that he could offer exculpatory evidence, the government may not deport him without first giving defense counsel a chance to interview him. The question of bad faith thus turns on what the government knew at the time it was made. You have a burden to show somehow that the government had reason to believe that at least some of those witnesses had favorable information. Now, as Judge Freeland pointed out, all we have to go on is the record that the government unilaterally made or failed to make, in this case, as to what they asked and how they determined that these people did not have information. So what you're saying is that under that standard, there's a violation for the government to do what? What is the bad faith here? Are you saying there was bad faith? The error was in deporting these people without better documenting the absence of basis to believe they had exculpatory information. We're saying that there was bad faith here, and the bad faith comes from, as the quotation from Leal del Carmen, from the government's knowledge. And here we have two sources where the government obtained knowledge that these on page 812 of the ER where he tells the government that. The second would be the government interviewing these witnesses and learning that they were unable to identify the driver. Regardless of the phrasing of that, that in and of itself would be favorable evidence. But counsel, that, just to follow up, that fact was stipulated to, you say it was for a strategic reason to get it before the jury. Well, you did get it before the jury. If these people could only say, out of fear or anything else, that they couldn't identify the driver, that was in the record and you got the advantage of saying every one of those witnesses without the vagaries of cross-examination that might shake them and press them and say if they were brought live into trial, well, I fear for my life if I identify Mr. Rivera. So there's all sorts of speculation that can go on about what would happen if the witness were brought into trial. So the rule that you're concerning, I'm sympathetic to your situation, just like the earlier case with the Bureau of Prison where the government controls the information. But we have to ground it in what the applicable law is. Correct, Your Honor. I would have two responses to that. One is I think that the remedy that Judge Friedland pointed out, which would be to remand for an evidentiary hearing, would be appropriate in this case. You didn't appeal that ruling. Your Honor, the motion to dismiss the indictment requested an evidentiary hearing that was denied and so that was part of the request. As far as I know, maybe you can point this out to me, the only matter you've appealed is the denial of the motion to dismiss the indictment. I didn't see that you'd also appealed the denial of an evidentiary hearing. That is correct, Your Honor. Do you think it's encompassed in the first one, though? That is our position, that because part of our request on the motion to dismiss the indictment was to obtain evidence in further support of that motion, which was denied, I would say that the denial of the motion to dismiss necessarily encompassed the denial of the evidentiary hearing as well. Do you think an evidentiary hearing could be useful? I do, Your Honor, because as Your Honor pointed out, since the declarations don't specify the specific phrasing of the questions, we simply don't know what the witnesses were asked, how it was phrased, whether definitively they were shown a lineup, and I think all of those things would be helpful in further establishing that. Was there any attempt or thwarting of an attempt to examine the witnesses, the agents who did testify, on that very question? The question you would now ask them is to explain how they framed the question. Was there no opportunity when the witnesses who did testify to ask them that as part of cross-examination? No, none of the witnesses the government brought forward in its case-in-chief, if I understand Your Honor's question, were involved in the interview process. They were the apprehending agent, and they were on the boat that apprehended the Ponga. Were there any other boats, were there any other people in the detention facility other than these 21? Do you know? I don't know the answer. From my reading of the record, everyone on the Ponga boat was, especially what happened was Mr. Rivera was identified as the driver and put into a separate cell, and then all of the 21 others were put into a cell together. I'm just wondering whether there were other people in that cell. It's unclear from the record, and I don't know the answer to that. All right, thank you very much. Thank you very much. We'll give you a couple of minutes for rebuttal. Good morning, may it please the Court, Benjamin Hawley for the United States. As the Court pointed out, the deportations here have, there's a two-pronged approach, both that there's bad faith and then that there's prejudice resulting from that. And I would point out, first of all, in terms of the bad faith, that this is a clear error standard review for this Court. So not just that the District Court was wrong in finding no bad faith, but that this Court is firmly convinced it was very wrong, essentially. That's not the clear error standard. The clear error standard is whether it's illogical, implausible, or no inferences can be made from the record. Yes, that was my phrasing of it, I apologize. But the point is, the District Court here was looking at whether this was like a Leal del Carmen situation, which, for what it's worth, was decided about two months after the deportations in this case. And it's different, because in Leal del Carmen, the witness specifically gave what is clearly exculpatory information. But isn't our problem here that we really don't know, we can't know if it was bad faith until we know whether this evidence would have been helpful to Mr. Rivera. And without more information about what was asked, whether they were shown a lineup, how this was all undertaken, how do we have any idea whether there was bad faith? We can't tell whether this evidence was exculpatory. What we can tell, so I agree that the agents could have and probably should have done a better job in either asking or at least documenting what was asked and the responses. But that does not then lead to bad faith. Well, I agree. At this point, it's very hard for him to show bad faith. But that's because we have no idea what happened here. And that's the government's fault. I mean, the government had the witnesses, they asked them something, they did something, but we have no idea what. And then they wrote something down, maybe or maybe not. And then they maybe lost their notes. We don't know. And so how do we have any idea that this isn't bad faith? I mean, how could he possibly show what we do know is that the agents said, and everyone agrees that none of these witnesses could identify the driver. But what does that mean? I mean, how do we know they didn't just say, do you know the driver's name? Can you identify the driver by name? I mean, and they all say no, but that means nothing. I mean, maybe they all would have pointed to this other guy. And honestly, that's that's unclear in the record. But that's why even if this court finds that it was bad faith, we then have to look to the to the prejudice prong the prejudice part here. And here because of that stipulation, there was no prejudice and even in but the but the stipulation is almost, I mean, it's basically as ambiguous as the I mean, yes, it says they didn't identify the driver, but we don't know what that it's pretty vague what that means. Right. So, you know, it wouldn't have been there would be prejudice. If what these people would have said is, oh, yeah, I don't know any of their names, but it's that other guy. But there's no indication that they said that the declarations were if they would have identified someone else, we would have made note of that. And and we lost our notes. I think the declaration was we didn't make notes. If we had they would have been lost. But I don't think that's I mean, it's really unclear. They sort of say we would have written it down. It might have been considered it's unclear whether it was considered because what they say is we would have made a note that would have been considered in the deportation process. But we don't actually even know whether I mean, maybe they had a note that said they pointed to someone else, but someone decided to deport them anyway. We don't have any idea. And that's where the stipulation comes in is that we say not only one party is saying this, but everyone agrees none of these people could identify the driver. And of course, the defense made a strong closing on that point saying not only these witnesses couldn't identify the driver, but the government agrees with that. And in fact, the quotation was no doubt about it. The government agrees. So it's not a situation where you have witnesses saying I couldn't identify him and someone challenges that or even it's just the person testifying. It's all the parties agreeing and the judge instructing the jury in its instructions or in the stipulation that they can consider that fact as having been proved. It's beyond dispute. As in Leal v. Carman, in that case where it was clearly exculpatory or apparently exculpatory, the court even said, look, this might have been rendered harmless if the district court had allowed the defendant to inform the jury of the that's what happened here. The problem is that not being able to identify the driver could mean a very neutral thing. Right. It could mean I couldn't see the driver because it was too dark. So I have no idea who the driver is. So that's just completely neutral. Right. But the other thing it could mean is I saw the driver. I was right next to the driver. You've now shown me a bunch of pictures and that driver is not here. I mean, that's really exculpatory. And we have no idea which it is. And the stipulation really doesn't say which one it is either. In the latter case, I think that would be different if you had, like in Leal v. Carman, a foot guide coming across the border, whereas here there are 21 people in the boat and there's no indication that someone jumped off the side. I mean, that didn't happen. We have we have a limited universe. But your I mean, your brief actually says they weren't even shown a photo lineup. So I mean, it's sort of backward here. It seems to me you should be saying, yeah, they were shown all the pictures that she should be saying. There were somehow you're arguing the opposite. But whatever you're saying, they weren't shown the pictures. So what do you think happened when they were saying they can't identify the driver? I mean, and to clarify, the record isn't 100 percent clear one way or the other on who was shown the pictures and when we do know at least the the one of the aliens who testified a trial in person live at some point was shown these various lineups. And he did identify Mr. Rivera. What happened with the others is simply unclear. But again, in the government's view, at least the stipulation, I'm sorry, you're saying that it was that the witness who testified was shown the photo array on the boat, not not while on the boat. It was I believe array wasn't available. Was it available on the boat? So no, it's the short answer. My understanding of what happened is that this obviously all takes place. See, they get transferred to a government boat, come and dock in and then everybody takes their pictures. And then right. And then from those create a photo lineup. But one could infer that if one was shown, it probably the others were depending on the timing. And the reason I say that is because in that testimony, he indicates he was shown the photo lineup. I believe he said about 24 hours later, about a day later. And it's just not clear if that's while he's in the group with everyone else or if the others have already been moved to a different place to start deportation proceedings or not. Mr. Holly, what bothers me about this is that the agents asked a question. Can you identify this captain who had the tiller in a way that the answer doesn't really tell us very much, as Judge Friedland said? Now, Mike, I'd like to go back a step from that. Were there any regulations or any guidelines as to how the agents should be examining these witnesses so that they get responsive and clarifying evidence instead of muddled evidence? Not that I know of. Was there any was there any claim made below that the agents acted in concert to ask muddling questions in order not to find out who the exculpatory witnesses were? No. And if there were evidence of that, I think that would be obviously much closer, if not absolutely bad faith. There's nothing along that line. At worst for the government, the record indicates the agents should have done a better job, that they were negligent in the way they asked these questions. But again, that doesn't get us to the line of bad faith. If we remanded for a hearing to try to figure out what happened here, is there information that the government could show about like a script that they use or guidelines? I mean, I guess you just said there are no guidelines, but is there anything the government could tell us if we remanded for a hearing? I think I think the best we could do is have those people come in and testify to whatever they remembered from when this happened back in 2012. You mean the government agents? The ones who were asking the questions? Correct. Because there were several different agents. I mean, do we even have an idea that they all asked the same things? It's just not clear. I don't know. So we could we could have a hearing where each of those six or so agents came in and tried to explain how they usually do this or what they usually ask or something that might shed some light on this. The court certainly obviously can remand for that purpose. Yes. But then it was still that's that's back into the prejudice argument that we've we've already been discussing. What about the point that the denial of the of the hearing was not appealed? I agree with that. I was just answering the question of could this court order this? Obviously, the court can. The the government's argument would be the appeal was from the denial of the motion to dismiss, not from the suggestion has been made that the appeal from the denial of the motion to dismiss encompasses the proceedings which preceded the denial. And I would disagree with I would disagree with that in terms of do we have any cases that say one way or the other? Not that I know of. Not not to say they don't exist. I just don't know of any off the top of my head to address. Why do you say that the appeal from the denial of motion to dismiss does not encompass the denial of the hearing? Because the district court believed it had sufficient information to make the decision it did. The was then appealed. And we review that decision not to grant a hearing for clear error or do because or de novo? I don't think that would be a factual determination that would be a clear error. So it would probably be de novo, Your Honor. Potentially abuse of discretion, but but I don't think it would be a clear error situation. Counsel also brought up this issue of the form that Mr. Rivera signed that's on page 812 of the record. And while he did say the question there is does anyone have exculpatory information? He initialed next to the yes box. Right below that though it says can you either have their names or can you at least describe them? Give some information so we can figure out who that is. And that's blank. There's there's no further kind of follow-up. And Mr. Rivera provided that we could then keep those people or further interview those particular individuals. And so again in terms of Leal del Carmen not only did they indicate this could be rendered harmless if the district court had allowed the jury to learn of these statements as we did here. Another somewhat important distinction is that in Leal del Carmen there were split verdicts. There was a long deliberation period for the jury. And here there's none of that. It was a short deliberation. The jury knew about all this information. It was discussed extensively during both parties closing arguments and apparently had no problem with the case. I mean we have no idea how long the jury would have taken if there had been four witnesses saying I sat next to the driver and none of that driver wasn't in the photo lineup or something like that. But what we I think the the inference can only go one way basically that if you have a long and divided deliberation that can indicate difficulty with the case. Whereas here we have a short deliberation one and a half hours and no divided verdict. I don't think you can make that reverse inference that because it was short. No I don't think we can infer it. I'm just saying we have no I mean the claim here is that all the evidence that would have helped him was sent to Mexico. So I mean we don't know how hard this case would have been if that had been that would be a counterfactual situation. What we do know is with that stipulation with the evidence it was short and straightforward. There was testimony as I understand it that the chase boat kept the driver in view. That is somebody and said he was the one wearing a red shirt and didn't have a life vest on or whatever. Was there a was that corroborated when I take it that describes Rivera he's number one in the photo lineup isn't it? Yes red shirt and black jacket. And there's somebody else number 16 who in the photo array that at least I've looked at also has a red shirt and a black cover. So there was a was that made a deal out of during the trial? In other words the government has some objective way to say that Rivera was the driver. Was that ever challenged? Yes because identity was the the kind of critical element of the case. They did challenge those identities but it was actually more than just this person's wearing a red shirt with a black jacket. You had I believe it's three different agents testifying during this high-speed dangerous chase. They're watching very closely the driver. In fact they're not just kind of looking generally they're looking at his hands especially to see if he's going to go left or right to try to to avoid a collision. And so they're keeping very very close watch and all the agents testified that's how we knew as soon as we boarded we went straight to that person who was still behind the wheel because we were keeping such a close watch to avoid a wreck to avoid some kind of problem. Wasn't he also bald? I don't remember that. They said his bald head but he's not really bald and neither is the other guy with the red shirt. So they both have sort of partial baldness it looks like. Let's not get into here or lack thereof. Mr. Gore has any further questions? Thank you. Let me ask you the same question I asked Mr. Hawley. Is there any claim here that the that the agents consciously ask muddling questions in order not to find out and not to prejudice their prosecution case? No your honor. I think that was information we were trying to get when we were interviewing the agents but there was no claim at that stage below. I wanted to make a couple points clear. Mr. Hawley pointed out that bad faith determinations are reviewed for clear error and while I agree with him as a matter of law the district court here actually didn't make a finding of bad faith. It found the evidence was not material and favorable and so it didn't need to get to the bad faith prong. So there's no factual finding regarding bad faith for this court to review for clear error and that's on pages 28 and 31 of the ER. And then the stipulation in United States versus Cooper this court addressed a similar concern with what in a jury instruction that an adverse inference jury instruction cure the problem when general testimony about the possible nature of just destroyed equipment would be an inadequate substitute for testimony informed by its examination and that was dealing with physical evidence being destroyed but I think we can apply that here with actual humans being deported from the country. And then the third point I wanted to make was that while the agents did all identify Mr. Rivera as the driver, Mr. Rivera impeached each of those agents testimony so this was a case where the agent's identifications weren't infallible. He pointed out that one of one of the agents actually made a prior inconsistent identification at a prior hearing. He said Mr. Rivera the driver rather was wearing a red jacket and a black shirt and then at trial he switched consistent with what Mr. Rivera was wearing and said he was wearing a black jacket and a red shirt and he also testified that the driver of the boat there was a canopy overhanging him excuse me so his view was partially obscured and so that question whether what he was seeing was actually completely clear. So there are several ways which we pointed out in the briefs where the agent's eyewitness identifications were impeached. All of which the jury heard. That is correct your honor. Okay so let's assume that we were to send this back for an evidentiary hearing. What would you and what comes out of it is that the agent's questions were just as they stated can you identify the driver and the answers were all no. Then where does that leave us? Is that the end of your case or you're trying to say on this record there's bad faith? I think we're saying we're adopting we're making the arguments in the alternative. I think the best the best case scenario would be in our position is that there is evidence here to establish bad faith but assuming in the alternative that this court disagrees then I think that an evidentiary would enable Mr. Rivera to develop the information to establish potentially that there was bad faith. But if you don't get any better than what the stipulation said then you're you don't prevail. Then his convictions would be essentially reinstated yes. Okay so so you're not arguing that we should adopt a rule that the government has some bigger burden to create a better record than they have here. Your honor I think uh I don't think we can argue that on this case. I do think that as Mr. Hawley has mentioned the agents didn't do a good job here and I think that Leal Del Carmen specifically puts the government on notice that that they need to investigate these situations more seriously. So to that extent I think that that's something that that we concur in but I don't think on this record we can say anything more than that. All right thank you very much. Yeah thank you both it's a very interesting case and very well argued. Yeah the case of the United States versus Jesus Manuel Rivera Paredes is submitted and that will bring us to the bottom of our calendar and we are
judges: Fisher, Bea, Friedland